United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 25, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-60320

_____

ALVA PEDEN; RICHARD L. PEDEN TRUST,
by and through its agent, ALVA PEDEN,

                         Plaintiffs - Appellants,

v.

RANDALL PETERSON, Individually and
as Agent for Western Reserve Life
Assurance Company of Ohio; WORLD
MARKETING ALLIANCE; WESTERN RESERVE
LIFE ASSURANCE COMPANY OF OHIO,

                         Defendants - Appellees.

---

Appeal from the United States District Court
for the Southern District of Mississippi
3:01-CV-149

---

Before WIENER, BENAVIDES, and DENNIS Circuit Judges.

BENAVIDES, Circuit Judge:[*]

     Appellants here present an interlocutory challenge to the

the district court's order compelling arbitration pursuant to the

Federal Arbitration Act, 9 U.S.C. § 2.  We reverse, finding that

the agreement that contains the arbitration clause is an

agreement separate from the one under which Appellants seek

---

     [*]Pursuant to 5TH CIR. R.  47.5, the Court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.  R.
47.5.4.

relief, and consequently Appellants are not bound to arbitrate their claims.

## I.

The controversy in this appeal arises from Plaintiffs-Appellants' action to reform the terms of an insurance contract to conform with what Appellants contend was the understanding of the contracting parties. In 1989, Richard Peden, the decedent in this life insurance action, established an insurance trust (the Trust) for the benefit of his wife and children. To fund the Trust the decedent purchased a $1,000,000.00 life insurance policy from Manulife Insurance Company (Manulife Policy). The decedent was sold the million dollar policy by his brother, Bobby Peden, who was licenced to sell non-variable insurance policies in Mississippi. The beneficiary of the Manulife Policy was the Trust, and the beneficiaries of the Trust were and are Peden's children and his second wife, Plaintiff-Appellant Alva Peden.

In 1996, upon his brother Bobby Peden's advice, the decedent decided to replace the Manulife Policy with a variable insurance policy. Bobby Peden was himself not licenced to sell variable insurance policies, so he referred his brother to variable insurance agent Randall Peterson.

At the time of the transaction in question Defendant-Appellee Peterson was licenced as an insurance agent under Mississippi law, and he held an agent appointment from Defendant-

2

Appellee Western Reserve Life Insurance Company of Ohio (Western Reserve). Peterson was also licenced to sell securities, and he was a registered representative of World Marketing Alliance Securities (WMA Securities), which is a company separate from but affiliated with Defendant-Appellee World Marketing Alliance (WMA).[1]

A. *The Purchase Meeting*

Appellants contend that the purchase of the Western Reserve Policy was negotiated between Bobby Peden and Peterson. Appellants assert that Bobby told Peterson that Richard Peden wished to purchase a variable insurance policy to fund the Trust and specifically to replace the Manulife million dollar policy. Appellants contend that Bobby arranged the purchase meeting between Richard Peden and Peterson in Gulfport, Mississippi, and that Bobby was present at the purchase meeting. Bobby avers that Peterson sold Richard a Western Reserve policy with a death benefit of $1,000,000.00 and that the Trust was identified as the sole beneficiary.

B. *The Securities Agreement and the Insurance Agreement*

In purchasing his variable insurance policy, the decedent purportedly filled out two separate applications: one application for a variable insurance policy, and one application for a

_____

[1]WMA Securities is not a party to this appeal, but it is one of WMA's registered broker-dealer affiliates.

securities brokerage account.[2]  The insurance application

(hereinafter Insurance Agreement) is a six-page document

captioned:

**Application for Life Insurance**
Western Reserve Live Assurance Co. of Ohio

The contract indicates that the broker-dealer is WMA, and that

the owner of the policy is Richard Peden. The agreement itself

includes medical information concerning Richard Peden, identifies

Alva Peden as the sole beneficiary, and lists the death benefit

as $412,000.00.   It is signed by the decedent as applicant and

by Randall Peterson as "witness (registered representative)" of

WMA.

In contrast, the application for the securities brokerage

account (hereinafter the Securities Agreement), is a single page

document that is captioned, "WMA SECURITIES, INC. (WMAS) NEW

ACCOUNT APPLICATION." The Securities Agreement indicates that the

decedent authorized an investment to be made on his behalf in the

"Freedom Equity Fund".  The agreement indicates that the fund

investment is to be derived from a source described merely as

"[v]ariable life".  It is this document that contains the

---

[2] Appellants contest the validity of the decedent's
signature upon the Securities Agreement as well as other aspects
of the contract's formation. However, we need not pass upon the
validity of the Security Agreement as our inquiry here is limited
to whether Appellants are compelled to arbitrate their claims
pursuant to the Insurance Agreement. To the extent this opinion
suggests that the Securities Agreement was properly executed and
is binding upon the decedent, we would be clear that we have not
passed upon that question.

arbitration provision under which Appellees sought arbitration. It states in pertinent part:

> I [Richard Peden] ... agree that ... any controversy arising out of my ... accounts, the transactions with WMA [Securities], ... or related to this agreement or breach thereof, shall be settled by arbitration in accordance with the rules then in effect of the National Association of Securities Dealers, Inc. (NASD).

The arbitration provision further provides that "[a]rbitration is final and binding on the parties (i.e. you [Richard Peden] and WMA [Securities])." Randall Peterson signed the Security Agreement on behalf of WMA Securities.

C. *Post-purchase Events*

Following the meeting at which the decedent purchased the Western Reserve variable insurance policy, the decedent and his wife began paying premiums to Western Reserve and ceased paying premiums on the Manulife policy. Appellees contend that on October 1, 1996, Richard Peden signed a single page "Amendment of Application" changing the death benefit of the Western Reserve policy from $413,000.00 to $380,000.00.

Subsequent to the decedent's purchase of the Western Reserve policy, Western Reserve contacted Manulife to have the cash value of the Manulife policy transferred to Western Reserve under the theory that the Western Reserve policy was a replacement policy for the Manulife policy. Manulife, however, refused the transfer

5

because the owner of the Western Reserve policy, according to Western Reserve, was the decedent Richard Peden, and the owner of the Manulife policy was the Trust. Therefore, according to Manulife, a replacement transfer of cash value was not permissible.

Appellants contend that Western Reserve then contacted Randall Peterson and informed Peterson that the Western Reserve policy reflected an error in ownership, that the correct owner was the Trust, and instructed Peterson to amend the policy to reflect the Trust as the owner. On March 5, 1997, Peterson responded in writing to Western Reserve, stating that he had contacted "policyholder services" and instructed them to change the beneficiary and owner of the Western Reserve policy to the Trust. Peterson also contacted Bobby Peden and assured him that the owner of the Policy has been changed to the Trust. However, the owner of the Western Reserve policy was never changed to reflect the Trust as owner. Consequently, the Manulife policy subsequently lapsed once the cash value had been completely depleted to cover the delinquent premiums.

On August 16, 1998, Richard Peden died. Western Reserve contacted Alva Peden and offered her a check for $380,000.00. Alva declined the remittance.

D. *Procedural History*

On January 31, 2001, Plaintiffs-Appellants Alva Peden and

the Trust instigated this action in state court seeking to reform the Western Reserve policy to reflect the Trust as the beneficiary and the death benefit in the amount of $1,000,000.00. Plaintiffs-Appellants also sought punative damages for gross negligence and bad faith.

Defendant-Appellee Western Reserve removed the action to federal court and filed a motion to compel arbitration which was joined by Defendants-Appellees Randall Peterson and World Marketing Alliance. The district court granted Western Reserve's motion to compel arbitration, and Appellants here present an interlocutory challenge to that ruling.

II.

The question before this Court is whether the district court properly granted Appellees' motion to compel arbitration, and this Court reviews that decision de novo.[3] *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). In deciding whether to compel arbitration pursuant to 9 U.S.C. § 2, the court considers: (1) whether there is a valid

---

[3]As an initial matter, the district court correctly found that the Federal Arbitration Act (FAA), 9 U.S.C. § 2, applies to the agreement in question here. The FAA provides that an arbitration agreement covered by the Act shall be, "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration agreements which govern contracts implicating interstate commerce are covered by the FAA. Here, Appellants do not contest the applicability of the FAA.

agreement to arbitrate between the parties, and (2) whether the dispute at hand falls within the perimeters of that agreement. *Id*. Here, we find that the contract that Appellants seek to reform does not contain a binding agreement to arbitrate between the parties to this appeal. Consequently, Appellants are not bound to arbitrate their claims.[4]

The question of whether a valid arbitration agreement exists between the parties to this appeal is governed by state law, and here Mississippi provides the controlling law. *Fleetwood Enterprises*, 280 F.3d at 1074. In Mississippi, it is well-settled that the unambiguous and plain language of an insurance policy is construed and enforced as written. *Mississippi Farm Bureau Cas. Ins. Co. v. Britt,* 826 So.2d 1261, 1266 (Miss. 2002)(finding that the court must give effect to a "valid, clear and unambiguous contract term where there is no statutory or public policy prohibition nullifying it"; *see also*, *Clarendon Nat. Ins. Co. v. McAllister*, 837 So.2d 779, 780 (Miss.App. 2003)(citing *Weeks v. Mississippi College*, 749 So.2d 1082, 1087 (Miss.Ct.App. 1999)).

Here, the plain language of the Insurance Agreement indicates that the arbitration provision contained in the

---

[4] Appellants challenge both of these factors, arguing that there is not a valid agreement to arbitrate between the parties to this appeal, and that, even if there were, Appellants' cause of action would not fall within the scope of the agreement. However, because we find the first question to be dispositive, we need not reach the issue of whether the cause of action falls within the scope of the agreement.

Security Agreement is not incorporated into the Insurance

Agreement. The contract states in pertinent part:

> This policy, the attached application and any
> additional applications at the time of
> reinstatement or increase in specified amount
> constitute the *entire contract*.

(emphasis added).  Appellants persuasively argue that because the

"attached application" does not contain the securities agreement,

the insurance policy is a separate contract which expressly does

not incorporate the securities agreement.

Although Appellees disagree on this point, they fail to

address the policy language highlighted by Appellants. Instead,

Appellees rely on a general theory that as a variable insurance

policy, the entire product was a security.  In support of this

view, Appellants direct the Court to a finding by the National

Association of Securities Dealers (NASD) that the entirety of a

variable insurance policy is subject to NASD regulation because

"the entire product is a security" not just the "Investment

Account" portion of the product.  However, Appellee's contention

does not resolve the contract point that Appellants raise. In

purchasing his variable insurance policy, the decedent was,

certainly, also purchasing a security. However, this fact does

not negate the fact that he was also executing two separate

contracts: one contract governing the terms of his security

account with WMA Securities, and one contract governing the terms

of the insurance arrangement he was entering into with Western

Reserve.[5]

Moreover, in Mississippi, parol evidence generally will not

be used to incorporate extrinsic materials where, as here, the

language of the contract itself defines exclusively the "entire

contract." *See Noble v. Logan-Dees Chevrolet-Buick, Inc*. 293

So.2d 14 (Miss. 1974)(excluding parol evidence where the contract

in question stated "[t]he front and back of this order comprises

the entire agreement pertaining to this purchase and no other

agreement of any kind, verbal understanding or promise

whatsoever, will be recognized.").

Finally, under Mississippi law the construction of the

Insurance Agreement must exclude the Securities Agreement.

Mississippi Code § 83-7-13 provides:

> All life insurance companies doing business
> in the State of Mississippi shall deliver to
> the insured with the policy, certificate, or
> contract of insurance in any form a copy of
> the insured's application; and in default
> thereof, said life insurance company shall
> not be permitted in any court of this state
> to deny that any of the statements in said
> application are true.

This provision requires an insurance company to include in its

---

[5] This point is further supported by the fact that the parties to the Security Agreement are different from the parties to the Insurance Agreement.  The Securities Agreement expressly binds only the decedent and WMA Securities, but WMA Securities is not a party to the Insurance Agreement. Instead, Peterson signed the Insurance agreement on behalf of WMA, which in turn bound Western Reserve.

10

delivery to the insured the entire insurance contract, including the application. *See National Life & Acc. Ins. Co. v. Prather*, 158 So. 881 (Miss. 1934) (interpreting an earlier but similar version of the Code); *see also*, *Aetna Life Ins. Co. v. McCree*, 164 So. 223 (Miss. 1935). Failure to do so generally results in the insurer forfeiting the right to rely on the undelivered materials in construction of the contract. *Id*. Here, it is undisputed that Western Reserve failed to deliver the Securities Agreement to the decedent as part of the entire insurance contract. Thus, under § 83-7-13 and the Mississippi rules governing the construction of insurance contracts, the failure of Western Reserve to include the Securities Agreement as part of the insurance contract it delivered to decedent undermines Western Reserve's ability to rely on the Securities Agreement as part of the Insurance Agreement in the course of the litigation in the instant case.

Thus, we find that the two agreements in question cannot be construed as a single contract. We have before us two agreements that bind different parties and are contained in separate documents. The agreements not only utterly fail to refer to one another, but in fact the language in the Insurance Agreement plainly precludes the incorporation of extrinsic materials. Additionally, Mississippi law concerning the construction of insurance policies counsels that the Securities Agreement be

excluded from our construction of the Insurance Agreement. Therefore we find that the Securities Agreement and the Insurance Agreement are two separate and unincorporated contracts. Consequently, as Appellants' claims arise under the Insurance Agreement, there exists no binding agreement to arbitrate those claims between the parties to this appeal.

III.

For the foregoing reasons we REVERSE the order of the district court compelling arbitration, and REMAND the case for proceedings consistent with the renderings of this Court.